IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

BRIAN ECKERT, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

v.

ALTERRA MOUNTAIN COMPANY and
IKON PASS, INC.,

    Defendants.

## CLASS ACTION COMPLAINT

BRIAN ECKERT ("Plaintiff") by and through his counsel, brings this action against ALTERRA MOUNTAIN COMPANY and IKON PASS INC. (collectively "Alterra" or "Defendants") on behalf of himself and those similarly situated, and makes the following allegations based on information, attorney investigation, and belief, except as to allegations pertaining to Plaintiff personally, which are founded on his respective knowledge.

### INTRODUCTION

1. Plaintiff brings this case against Defendants seeking reimbursement for the unused value of Defendants' expensive, pre-paid, Ikon Pass ski products following the closure of Alterra's mountains, ski lifts, ski slopes and recreational facilities due to the Novel Coronavirus Disease of 2019 ("COVID-19"). As a result of Alterra's closures, Plaintiff and similarly situated consumers lost substantial value of the full pre-paid benefits associated with their Ikon Passes for the remainder of the ski season, at no fault

1

of their own, and not because of either a lack of snow or desire to utilize their ski passes. Plaintiff and similarly situated consumers seek refunds for the value of the unused, pre-paid amounts of their Ikon Passes, on a pro-rata basis, as well as other damages resulting from the early termination of the duration of the ski season, particularly the coveted spring ski season for avid skiers likely to purchase Ikon's Passes.

**BACKGROUND**

2. Defendants announced that it would be closing their mountains, ski lifts, ski slopes and recreational facilities to consumers until further notice on March 15, 2020 because of the COVID-19 pandemic.[1]

3. At around the same time, the Centers for Disease Control, and multiple state and local governments, including the Governor of Colorado issued a form of "Stay at Home, Stay Safe" order requiring consumers to remain in their homes except for essential activities. Most states where Alterra operates, including Colorado, expressly deemed engaging in outdoor physical exercise related activities to be "essential" or "necessary." Indeed, Colorado Public Health Order 20-24 expressly defined "Necessary Activities" as including engaging in "outdoor activity, such as, by way of example and without limitation, walking, hiking, nordic skiing, snowshoeing, biking or running."[2]

4. Conversely, most states where Alterra operates, including Colorado, closed non-"Critical Businesses." While certain of Alterra's ski-resort operations fall within the definition of Critical Businesses operations, such as the provision of food and lodging, e.g., hotels, ski resorts are not specifically exempted from Business Closures, but

---

[1] https://www.alterramtnco.com/news/2020/03/14/alterra-mountain-company-closure-announcement
[2] https://sjbpublichealth.org/wp-content/uploads/2020/03/Public_Health_Order_20-20_3-25-20.pdf

also are not specifically identified as a health clubs, gyms, or similar facilities that are expressly closed by virtue of the various state stay at home orders. Surely, many avid skiers that purchase season ski passes like Ikon's would consider their favorite Alterra ski resorts to be a "critical business," and necessary or essential recreational activity, particularly during the Spring season.

5. Alterra's closure of their mountains, ski slopes, ski lifts and recreational facilities, regardless of whether required under state order, pre-maturely shortened the ski season, in particular the spring ski season, for its Ikon Pass holders. This deprived Plaintiff, and those Class members he seeks to represent, the *pro rata* unused value of their pre-paid Ikon Passes, and resulted in Defendants unfairly and unlawfully retaining such value for their own benefit and without having to incur the operating costs associated with earning that benefit.

6. While Alterra provided certain refunds and rebates to other customers, it merely offered discounts to Ikon Pass holders toward the purchase of Ikon Passes for next year's 2020-2021 ski season.[3] Moreover, Defendant Ikon Pass, a stand-along entity, which actually issues the passes and obtains the associated revenue, likely has little, if any, operating expenses directly associated with the Ikon Pass itself.

7. In short, Defendants have earned a windfall on their Ikon Passes at the expense of their most loyal customers, and have improperly retained monies paid by Plaintiff and the other members of the Class (*See* Class Definitions at ¶ 36). Even if Defendants did not have a choice in closing their ski slopes, ski lifts, mountains and

---

[3] https://www.alterramtnco.com/news/2020/04/17/ikon-pass-introduces-adventure-assurance

recreational facilities to their consumers, they nevertheless improperly retained an unfair share of the value and associated benefits of Plaintiff's and putative Class members' pre-paid Ikon Passes.

8. Plaintiff brings this class action on behalf of himself, and those individuals similarly situated, for injunctive, declaratory, and equitable relief, and any other available remedies, resulting from Defendants' illegal and unfair conduct.

9. This lawsuit also seeks disgorgement of the value of the Ikon Passes that were unused at the time Defendants closed their mountains, ski lifts, ski slopes and recreational facilities due to the COVID-19 pandemic.

## **PARTIES**

10. BRIAN ECKERT is a resident of New Mexico who purchased one Ikon Base Pass on October 16, 2019 for the 2019-2020 ski season, paying $749 for the Pass, and did not receive a partial refund when Defendants announced the closure of their mountains, ski lifts, ski slopes and recreational facilities in March of 2020. Plaintiff fully intended on using his Ikon Pass throughout the duration of the ski season, which can extend until July (*See* ¶¶ 23-24, 28). Attached as Exhibit A is a copy of the front and back of Plaintiff's Ikon Base Pass with its terms and conditions.

11. Defendant ALTERRA MOUNTAIN COMPANY is a Delaware Corporation with its headquarters at 3501 Wazee St., Denver, CO 80216. Defendant operates over 40 ski areas and mountain resorts around the world including: Squaw Valley Alpine Meadows, June Mountain, Mammoth Mountain, Big Bear Mountain Resort, Crystal Mountain, The Summit at Snoqualmie, Steamboat, Aspen Snowmass, Winter Park Resort, Copper Mountain, Arapahoe Basin Ski Area, Eldora Mountain

Resort, Big Sky Resort, Jackson Hole Mountain Resort, Taos Ski Valley, Deer Valley Resort, Solitude Mountain Resort, Brighton, Alta, Snowbird, Boyne Highlands, Boyne Mountain, Stratton, Killington-Pico, Sugarbush Resort, Snowshoe Mountain, Sunday River, Sugarloaf, Loon Mountain, SkiBig3, Revelstoke Mountain Resort, CMH Heli-Skiing & Summer Adventures, Cypress Mountain, Tremblant, Blue Mountain, Valle Nevado, Zermatt Matterhorn, Thredbo, Mount Butler, Coronet Peak, The Remarkables, Mount Hutt, and Niseko United.

12. Defendant IKON PASS, INC. is a Delaware Corporation with its headquarters at 3501 Wazee St., Denver, CO 80216. IKON PASS, INC. is a fully-owned subsidiary of ALTERRA MOUNTAIN COMPANY.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. 1332(d)(2)(A), because the aggregated damages of the Class members exceeds $5,000,000, exclusive of interests and costs, over 100 members of the Class are thought to exist, and this is a class action in which the Plaintiff is from a different State than the Defendants.

14. This court has personal jurisdiction because, among other reasons, Defendants reside in the State of Colorado and reside in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(1) because the Defendants reside in this District and are residents of the State in which this District is located.

16. Alternatively, venue is proper in this District because the Plaintiff was harmed in this District and the events giving rise to the Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

17. Defendants sell Ikon Passes through their Ikonpass.com website.[4] As shown below, Defendants' own marketing materials suggest an "endless adventure" which, for Plaintiff and members of the Class, ended prematurely and at no fault of their own.



18. Defendants offer a variety of Ikon Pass options for the 2020-2021 ski season including, without limitation, the Ikon Pass that retails currently for $999, the Ikon Base Pass for $699, and the Ikon Session Pass 4-Day starting at $399 (collectively, "Ikon Pass"). The prices for the Ikon Passes for the 2019-2020 ski season were similar but are no longer available on Defendants' website.

19. The $999 Ikon Pass offers unlimited access at fifteen of Defendants' resorts and up to seven days each at twenty-five additional mountains.[5]

---

[4] https://www.ikonpass.com/
[5] https://www.ikonpass.com/en/shop-passes/ikon-pass-2020-2021

20. The $699 Ikon Base Pass offers unlimited skiing at some of Defendants' resorts and up to five days each at twenty-four mountains.[6]

21. The $399 Ikon Session Pass 4-day offers 4 days of skiing with a choice from 30 destinations.[7]

22. Plaintiff and members of the Class are consumers who paid the cost of one or more Ikon Passes for the 2019-2020 ski season.

23. Prior to the COVID-19 pandemic, mountains, ski lifts, ski slopes and recreational facilities were scheduled to be opened for the entire ski season, the dates of which varied depending on the mountain and its location:[8]

> The length of the typical ski season varies by the local climate, the individual mountain and, of course, the seasonal weather conditions. But the average length of a ski season is five to six months for many U.S. ski resorts. Some mountains are able to stay open longer due to higher elevations and colder temperatures, not mention the great modern ski season-extender, snowmaking equipment . . . Near the West Coast, Mammoth Mountain Ski Area opens in November and has an unusually long season, sometimes not closing until the 4th of July.

24. Based upon information and belief, Arapahoe Basin Ski Area, an Ikon Pass partner, was open for the 2018-2019 ski season until early July 2019. Many other ski resorts operated by Alterra regularly continue operations through April and often into May for the coveted Spring ski season.

25. In January of 2020, COVID-19 began presenting American cities and businesses with an unprecedented, modern-day challenge: maintaining the fabric of our economy and communities while protecting American lives.

---

[6] https://www.ikonpass.com/en/shop-passes/ikon-base-pass-2020-2021
[7] https://www.ikonpass.com/en/shop-passes/ikon-session-pass-4-day-2020-2021
[8] https://www.liveabout.com/how-long-is-typical-ski-season-3009674

7

26. In March 2020, several U.S. cities, states, and municipalities began calling for social distancing to slow the spread of COVID-19. Eventually, some cities, states and municipalities ordered citizens and residents to "shelter-at-home," effectively requiring them to stay home, other than to receive essential services. Like many other states where Alterra operates, Colorado Public Health Order 20-24 expressly deemed ski-related activities to be a Necessary Activity.[9] However, such states, including Colorado, closed non-"Critical Businesses," but neither identified ski resorts as critical, notwithstanding their provision of food and lodging (defined as a critical service), nor specifically identified ski resorts for required Business Closures, such as health clubs, gyms, or similar facilities.

27. As a result of the COVID-19 pandemic, on March 15, 2020, Defendants closed "until further notice" all 15 of their ski resorts, mountains, ski slopes, ski lifts, and recreational facilities.

28. It is commonplace for avid skiers to ski late in the season. In fact, spring is one of the most popular seasons for avid skiers to hit the slopes.[10] Defendants' failure to keep open and/or re-open mountains by the spring substantially devalues these consumers' Ikon Passes.

29. Defendants have retained the value of payments made by Plaintiff and other members of the Class for Ikon Passes while failing to provide the services for which those fees were paid.

---

[9] Colorado Public Health Order 20-24 defines "Necessary Activities" as including engaging in "outdoor activity, such as, by way of example and without limitation, walking, hiking, nordic skiing, snowshoeing, biking or running." *See* https://sjbpublichealth.org/wp-content/uploads/2020/03/Public_Health_Order_20-20_3-25-20.pdf

[10] https://www.powder.com/stories/skiing-as-craft/spring-skiing-best-skiing/

30. Instead of providing refunds, Defendants have merely offered additional discounts to 2019-2020 Ikon Pass holders who decide to renew for the 2020-2021 ski season.[11] Ikon stated as much in an email to Pass holders on April 14, 2020:

> As a valued member of our Ikon Pass community, we want to share our appreciation and gratitude with you by doubling your 20/21 renewal discount from $100 to up to $200 per Ikon Pass and from $50 to $100 per Ikon Base Pass. In addition to these savings, we are also giving you more time to renew your pass at the best value, until May 27, 2020. The zero interest payment plan also remains an option for you . . .
>
> We thank you for your enduring love of the mountains. Sweet days await us.
>
> Be well. Your friends at Ikon Pass.

31. While Defendants are offering Plaintiff and Class members a small discount on Ikon Passes for the 2020-2021 ski season, that is not nearly adequate to compensate Ikon Pass holders for Defendants' early closure of their resorts and the lost value for what they paid. As further insult to injury, Defendants removed access to two of the most popular ski resorts - Jackson Hole Mountain Resort and Aspen Snowmass - from next year's Ikon Base Pass, as shown below:



---

[11] https://theknow.denverpost.com/2020/04/14/ikon-pass-2020-2021-season-discounts-coronavirus/237487/

32. Defendants also announced their "Adventure Assurance" Program whereby consumers given access to these Ikon Pass discounts can defer them to the 2021-2022 ski season:[12]

> In addition to the double renewal discounts provided for the shortened 19/20 winter season, we are now offering Adventure Assurance, the ability to defer a 20/21 Ikon Pass to winter 21/22, for any reason, with no fee . . . We understand skiers and riders may feel unsure about the future and it may be difficult to commit to adventures still months away. We hope this new option enables them to feel the confidence to purchase today, or whenever they are ready.

33. Various members of the Class have demanded the return of a pro-rata portion of their Ikon Pass. For example, as evident in their social media postings, putative class members are angry, have been injured, and are demanding restitution:[13]

- **All pass holders should open a chargeback dispute, I just did:** I think what they're doing is unethical they have been pumping sponsored ads for next year during the last few months while everything was in flux.

- **JSYK: You should be pissed about the response from Ikon:** Ikon's official statement about giving partial credit towards next years pass is a huge **** *** to the community . . . This is a squeeze attempt on current pass holders to see how much they can get out of the situation . . . Regardless of how much you used your pass, every single person should be demanding a refund.

34. Defendants, however, repeatedly have made clear their policy not to provide refunds to consumers with Ikon Passes and instead will only provide discounts toward a 2020-2021 or 2021-2022 Ikon Pass.

35. Through this lawsuit, Plaintiff seeks – for himself and the other members of the Class – a partial refund of fees paid for Ikon Passes representing the unused portions of those Ikon Passes.

---

[12] https://www.alterramtnco.com/news/2020/04/17/ikon-pass-introduces-adventure-assurance
[13] https://www.reddit.com/r/Ikonpass/comments/fj04vr/refunds_without_insurance_due_to_coronavirus/

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action individually and, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and/or (c)(4) for equitable relief and disgorgement on behalf of the following Class:

> **Ikon Pass Class:** All consumers who paid the cost for an Ikon Pass for the 2019-2020 ski season who were not able to use, or did not otherwise get the full value from, any unused portion of their Ikon Pass, following closure of Defendants' mountains, ski lifts, ski slopes and recreational facilities on March 15, 2020.

37. Excluded from the Class are Alterra Mountain Company, Ikon Pass, Inc., and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns, the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

38. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

39. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous and geographically disbursed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained by Defendants' records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

40. **Commonality – Federal Rules of Civil Procedure 23(a)(2); Predominance – Federal Rules of Civil Procedure 23(b)(3).** This action involves

questions of law and fact common to the Class, which predominate over any individual questions:

    a. Whether Defendants breached their contracts with Plaintiff and other members of the Class by closing their mountains, ski slopes, ski lifts, and recreational facilities but not refunding the unused portions of their Ikon Passes;

    b. Whether Defendants were unjustly enriched by retaining payments of Plaintiff and other Class members without providing the services for which the Ikon Passes were supposed to provide;

    c. Whether Defendants committed conversion by retaining payments of Plaintiff and other Class members when Defendants closed their mountains, ski slopes, ski lifts and recreational facilities and refused to provide access to Ikon Pass holders;

    d. Whether certification of the Class is appropriate under Fed R. Civ. P. 23;

    e. Whether the Class members are entitled to declaratory, equitable, injunctive relief, and/or any other relief; and

    f. The amount and nature of relief to be awarded to Plaintiff and the other Class members.

41. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid fees for Ikon Passes but were not provided the services that those fees were supposed to cover. Plaintiff and the other Class members suffered damages – namely, the loss of their fees and monies paid for Ikon Passes – as a direct and proximate

result of the same wrongful conduct in which Defendants engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class members' claims.

42. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members who he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

43. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole.

44. **Certification of Specific Issues – Federal Rule of Civil Procedure 23(c)(4).** To the extent the Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive this litigation toward resolution.

## CLAIMS ALLEGED

### FIRST CLAIM FOR RELIEF

**Breach of Contract**
**(Plaintiff and the Ikon Pass Class)**

45. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as if fully set forth herein.

46. Plaintiff brings this claim individually and on behalf of other members of the Ikon Pass Class

47. Plaintiff and the Ikon Pass Class entered into contracts with Defendants, which provided that Plaintiff and other members of the Ikon Pass Class would pay fees to ski one or more times at one or more of Defendants' ski resorts.

48. Plaintiff and other members of the Ikon Pass Class fulfilled their end of the bargain when they paid the fees for their Ikon Passes.

49. Defendants breached the contract with Plaintiff and the Ikon Pass Class by closing all of its mountains, ski slopes, ski lifts, and recreational facilities on March 15, 2020, well before the planned end of the ski season at Defendants' mountains.

50. Defendants retained the monies paid by Plaintiff and the Ikon Pass Class, without providing them the benefit of the bargain, namely access to the mountains, ski slopes, ski lifts, and recreational facilities to which their Ikon Passes entitled them.

51. Plaintiff and other members of the Ikon Pass Class are entitled to a refund.

52. Plaintiff and other members of the Ikon Pass Class are entitled to an equitable remedy – here: disgorgement of the unused amounts of the Ikon Passes purchased by Plaintiff and members of the Class.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment
### (Plaintiff and the Ikon Pass Class)

53. Plaintiff repeats and re-alleges the allegations in the Paragraphs above, as if fully alleged herein.

54. Plaintiff brings this claim individually and on behalf of the other members of the Ikon Pass Class and in the alternative to the breach of contract claim brought on behalf of the Plaintiff and other members of the Ikon Pass Class.

55. Defendants have received a benefit at the expense of Plaintiff and other members of the Ikon Pass Class to which they are not entitled. Plaintiff and other members of the Ikon Pass Class paid substantial fees for access to a full season, or one or more days, of skiing at one of Defendants' mountains and ski resorts but did not receive the full benefit of their bargain. Accordingly, Defendants should return some or all of the monies that Class members paid for these Ikon Passes. Equity demands the return of the value of these Ikon Passes from the date Defendants' mountains closed in March until the end of the ski season.

56. Defendants have been enriched by retaining the monies paid by Plaintiff and other members of the Ikon Pass Class for access to a full season, or one or more days, of skiing without providing the services for which those monies were paid. Equity requires that the Defendants return to consumers a portion of the monies they paid for Ikon Passes.

**THIRD CLAIM FOR RELIEF**

**Conversion**
**(Plaintiff and the Ikon Pass Class)**

57. Plaintiff repeats and re-alleges the allegations in the Paragraphs above, as if fully set forth herein.

58. Plaintiff brings this claim individually and on behalf of the other members of the Ikon Pass Class.

59. Plaintiff and other members of the Ikon Pass Class have a right to the services that were supposed to be provided in exchange for their payments to Defendants. The amounts of funds Plaintiff and each putative class member paid to Defendants can be traced through Defendants' payment systems.

60. Defendants intentionally interfered with the rights of Plaintiff and other members of the Ikon Pass Class when they closed all of their facilities, while retaining the fees paid by Plaintiff and other members of the Ikon Pass Class.

61. Defendants deprived the Plaintiff and other members of the Ikon Pass Class of their fees or their right to the benefits and services for which their fees were intended to be used.

62. Ikon Pass Class members demanded the return of pro-rated, unused portion of the fees they paid for their Passes for the remainder of the 2019-2020 ski season.

63. Defendants' retention of the fees paid by Plaintiff and the other members of the Ikon Pass Class without providing them with the services for which they paid, deprived Plaintiff and the other members of the Class of the benefits for which their fees were paid.

64. This interference with the services for which Plaintiff and other members of the Ikon Pass Class paid damaged Plaintiff and the other Class members in that they paid fees for services that will not be provided because all of Defendants' mountains, ski slopes, ski lifts, and recreational facilities are closed for the remainder of the ski season.

65. Plaintiff and other members of the Ikon Pass Class are entitled to a return of the pro-rated, unused portion of the fees paid for their Ikon Passes through the end of the ski season.

## REQUEST FOR RELIEF

Plaintiff, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a) Certifying the Class as requested herein, designating Plaintiff as class representatives, and appointing the undersigned counsel as Class Counsel;

b) Declaring that Defendants are financially responsible for notifying Class members of the pendency of this suit;

c) Declaring that Defendants have wrongfully kept monies paid by consumers for Ikon Passes;

d) Requiring that Defendants disgorge amounts wrongfully obtained in fees for Ikon Passes;

e) Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from retaining the pro-rated, unused monies for Ikon Passes;

f) Awarding Plaintiff's reasonable attorney's fees, costs and expenses;

g) Awarding pre- and post-judgment interest on any amounts awarded; and

h) Awarding such other and further relief as may be just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands trial by jury on all causes of action so triable.

**SHUMAN, GLENN & STECKER**

/s/ *Rusty E. Glenn*
Rusty E. Glenn (39183)
600 17th Street, Ste. 2800 South
Denver, CO 80202
Telephone: (303) 861-30003
Email: rusty@shumanlawfirm.com

*Local Counsel for Plaintiff*


**MILBERG PHILLIPS GROSSMAN LLP**

Jennifer Kraus-Czeisler
Adam H. Cohen
Blake Yagman
One Pennsylvania Plaza, Suite 1920
New York, New York 10119
Telephone: (212) 594-5300
E-mail:  jczeisler@milberg.com
    acohen@milberg.com
    byagman@milberg.com


**EVANGELISTA WORLEY LLC**
James Evangelista
David Worley
Hannah Drosky
500 Sugar Mill Road, Suite 245A
Atlanta, Georgia 30350
Telephone: (404) 205-8400
E-mail:   jim@ewlawllc.com
    david@ewlawllc.com
    hannah@ewlawllc.com


*Counsel for Plaintiff*

EXHIBIT "A"



01-1614 7133 5350 5941 5215-0

SKIDATA EX19248-30318US

## WARNING

Under state law, a skier assumes the risk of any injury to person or property resulting from any of the inherent dangers and risks of skiing and may not recover from any ski area operator for any injury resulting from any of the inherent dangers and risks of skiing, including: Changing weather conditions; existing and changing snow conditions; bare spots; rocks; stumps; trees; collisions with natural objects, man-made objects, or other skiers; variations in terrain; and the failure of skiers to ski within their own abilities. Under Wyoming law, a skier assumes the inherent risks of skiing and is legally responsible for any and all damage, injury or death to person or property that results from the inherent risks of skiing. This pass remains the property of Ikon Pass, Inc. ("Ikon"). Use is subject to the Release of Liability, Waiver of Claims, Warning, Assumption of Risk and Indemnity Agreement ("Agreement") entered into by Passholder. Passholder agrees to comply with all applicable rules, including codes of conduct, of each Resort (as defined in Agreement) and all applicable laws and regulations. Passholder accepts full responsibility for all risks associated with the Activities (as defined in the Agreement) offered through this pass and hereby releases Ikon, Resorts and each of their respective subsidiaries and affiliates of all legal liability for same. In the event of a claim, Passholder agrees that the jurisdiction in which the alleged incident occurred shall be the appropriate forum and that state, provincial or federal laws of that jurisdiction will apply in accordance with the Agreement.

Cette passe demeure la propriété d'Ikon Pass, Inc. ("Ikon"). L'utilisation est assujettie à l'Entente de Dégagement de responsabilité, Renonciation aux réclamations, Mise en Garde, Acceptation des risques et Accord d'indemnisation ("L'Accord") conclue par le détenteur. Le détenteur accepte de respecter les lois et règles, incluant les codes de conduites, applicables à chaque Centre de villégiature (telle que définie dans l'Accord). Le détenteur accepte tous les risques associés aux Activités (telles que définies à l'Accord) offertes avec cette passe. En cas de réclamation, le détenteur accepte que la juridiction dans laquelle l'accident allégué a eu lieu sera le forum approprié et que les lois étatiques, provinciales ou fédérales de cette juridiction s'appliqueront conformément à l'Accord.

**NO REFUNDS/NON-TRANSFERABLE/ ILLEGAL TO RESELL/PERSONAL USE ONLY**

**AUCUN REMBOURSEMENT/NON-TRANSFÉRABLE/REVENTE ILLÉGALE/ UTILISATION PERSONNELLE SEULEMENT**